UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jerald Boitnott, | File No.: 18-cv-1702 WMW/BRT |
| Plaintiff, | Judge: Wilhelmina M. Wright |
| vs. | **DEFENDANTS BORDER FOODS, INC. D/B/A TACO BELL AND RALCO, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| Border Foods, Inc. d/b/a/ Taco Bell and RALCO, LLC, | |
| Defendants. | |

## INTRODUCTION

Defendants Border Foods, Inc. d/b/a Taco Bell ("Border Foods") and Ralco, LLC (collectively, "Defendants") agree that the Americans with Disabilities Act ("ADA") is important legislation that requires accessibility to public venues for disabled individuals. The statute was not, however, intended to provide a vehicle for pursuing claims that have been remedied and have no likelihood of recurrence, as this Court has recognized on several occasions; nor was it meant to encourage attorneys to continue to pursue claims long after places of public accommodation were brought into compliance. Plaintiff Jerald Boitnott's ("Plaintiff") Memorandum in Opposition ("Opposition") to Defendants' Motion to Dismiss ("Motion") tries to do just that. Because Plaintiff's Opposition offers no material grounds for disputing the fact that there is no harm for the Court to redress, Defendants respectfully request that the Court grant Defendants' Motion.

**ARGUMENT**

**I.   PLAINTIFF CANNOT ASSERT NEW CLAIMS THROUGH HIS OPPOSITION BRIEF**

Plaintiff's Opposition asserts *new* complaints regarding Defendants' handicap parking signage and the slope of the parking space and access aisle in hopes that these new allegations will support his policy claims.[1]  ECF 20, p. 23.  This Court has repeatedly rejected efforts such as these to assert new ADA violations not alleged in the Complaint.  *See Davis v. Scheman Dev., LLC*, No. 15-CV-3041 (WMW/KM), at 7 (D. Minn. Feb. 24, 2017), at 7 & 9 n.2 (D. Minn. Feb. 24, 2017) ("[O]nly the specific architectural barriers identified in [plaintiff's] complaint are relevant to her ADA claim."); *Davis v. Queen Nelly, LLC*, 2016 WL 5868066, at *1 (D. Minn. Oct. 6, 2016) ("The only alleged violations that are relevant to this suit are therefore the ones that were alleged in the Amended Complaint, which Defendants have inarguably remedied."); *Hillesheim v. Buzz Salons, LLC*, 2017 WL 3172870, at *8 (D. Minn. June 19, 2017), *report and recommendation adopted*, 2017 WL 3172751 (D. Minn. July 25, 2017).  The only violations this Court need consider are therefore the violations that Plaintiff alleged in his Amended Complaint, which Defendants have undoubtedly remedied.  *See* ECF 15, pp. 7–9; ECF 16, ¶¶ 6–7; ECF 17, ¶¶ 6 – 7.

---

[1] Plaintiff also argues that Defendants' parking stalls are not compliant with the ADA. ECF, pp. 23–24.  As Defendants explained in their opening memorandum, however, the current structure of the handicap access aisle as it currently exists is ADA-compliant.  *See* ECF 16, ¶ 6(b) & Ex. A (citing ADA Accessibility Guidelines, section 502.3).  Plaintiff's contentions regarding what would be "preferable" are not sufficient to establish a violation of the ADA where the express words of the ADA Standards state that such routes are not mandatory.  *Id.*

Even if the Court were to consider Plaintiff's newly-alleged claims, Defendants' actions relating to these claims support Defendants' Motion, not Plaintiff's Opposition. As this Court has explained, a defendant's remediation of violations alleged for the first time in opposition to a dispositive motion actually *supports* the defendant's commitment to being complaint with the ADA. *Hillesheim*, 2017 WL 3172870, at *8 (finding that the defendant's remediation of ADA violations alleged for the first time in response to a motion to dismiss supported the defendant's "commitment to ADA compliance"). Here, it is undisputed that Defendants have assessed and are actively remedying the two additional violations that Plaintiff has asserted for the first time in his Opposition, with one of the violations already completely remedied.[2] Second Declaration of Barry M. Zelickson ("Second Zelickson Decl."), ¶¶ 3–4 & Ex. N. Plaintiff's attempt to manufacture additional ADA violations outside of those alleged in his Amended Complaint directly contradicts his Opposition by providing this Court with further evidence that Defendants' policies and procedures are committed to quickly assessing and addressing ADA violations, even when those violations are not the subject of litigation.

---

[2] As noted in Mr. Zelickson's Second Declaration, Defendants have fully-remedied the height of handicap parking signs to comply with the ADA. Second Zelickson Decl., ¶ 3 & Ex. N. Defendants have likewise hired an auditor from Asphalt & Concrete, Inc. to assess the Property, and are working with that company to implement an asphalt overlay with tapering to blend the new asphalt evenly into the existing asphalt. *Id.* at 4. These actions will fully address both of the new allegations that Plaintiff improperly puts forth in his Opposition.

3

## II. PLAINTIFF'S CLEAR FAILURE TO MATERIALLY ADDRESS HIS LACK OF STANDING SUPPORTS A FINDING THAT PLAINTIFF LACKS STANDING TO PURSUE HIS CLAIMS

Plaintiff's Opposition focuses on the various arguments regarding the mootness of his claims. He does not even address the concept of standing except to allege that he is somehow exempt from Article III standards because he originally filed his action in state court. *See* ECF 20, pp. 2, 28–31. But this argument is patently false. Indeed, the very case Plaintiff cites in support of his alleged right to proceed without Article III standing found the opposite—that a plaintiff must satisfy Article III if the case is to continue in federal court, regardless of where the action was originally filed. *See St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 2018 WL 3719694 (8th Cir. Aug. 6, 2018). There is therefore no merit to Plaintiff's contention that he need not satisfy Article III to pursue his claims in federal court. Because it is evident that Defendants were not named in any action until <u>after</u> they had voluntarily cured all of the problems alleged in Plaintiff's Amended Complaint, there was no "remedy" for the Court to grant at the time this case was commenced against Defendants. ECF 16, ¶¶ 4 & 7. As such, the Court need not even address Plaintiff's arguments relating to mootness, but should instead dismiss this case on lack of standing grounds alone.

## III. PLAINTIFF'S ATTEMPTS TO DISTINGUISH HIS LACK OF POLICY CLAIMS FROM HIS BARRIER CLAIMS LACK MERIT

To the extent that the Court does wish to engage in an analysis past Plaintiff's lack of standing, it should nevertheless dismiss Plaintiff's claims on mootness grounds. Plaintiff attempts to save his case from dismissal by arguing that his alleged lack of policy

4

claims survive the mootness and standing defects of his barrier claims. ECF 20, pp. 10–18. Specifically, Plaintiff argues that, regardless of whether the architectural barriers have been remedied, the very fact that the barriers once existed demonstrates that Defendants lack appropriate policies under the ADA. *Id.* Were a party allowed to pursue these types of overbroad lack of policy claims in hopes of unilaterally defeating the concepts of standing and mootness, it would effectively open the door to new lawsuits against every defendant that has ever been accused of an architectural barrier—regardless of whether any barrier still exists—on the grounds that the very occurrence of a barrier evidences insufficient policies. Such a result would be incredible and would violate the concept of mootness. For this reason and the reasons below, Plaintiff's policy arguments lack merit and should be dismissed.

### A.   Plaintiff Cannot Maintain his Lack of Policy Claims Without his Architectural Barrier Claims

Plaintiff's lack of "policy" allegations are nothing more than a veiled attempt to propound his argument regarding voluntary cessation in the mootness context a second time. Indeed, Plaintiff cites numerous cases relating to voluntary cessation and the "capable of repetition yet evading review" exception in his lack of policy argument section. *See, e.g.*, ECF 20, p. 16. Contrary to Plaintiff's arguments, however, lack of policy claims under the ADA are **not** the same as claims that have been remedied but are capable of repetition yet evading review. Rather, lack of policy claims under the ADA only arise when court intervention to require implementation of policies is "necessary to afford [] goods, services, facilities, privileges, advantages, or accommodations to individuals with

disabilities." 42 U.S.C. § 12182. Where a Defendants' actions or policies adequately and voluntarily provide such accommodation without Court intervention, no policy claims exist.

Here, Plaintiff argues that the very existence of architectural barriers on the Property[3] gives rise to a claim that Defendants' policies are inadequate. *See* ECF 20, pp. 12–18. For example, Plaintiff appears to suggest that the existence of previously-misplaced grab bars demonstrates that Defendants' policies are inadequate to ensure proper placement of grab bars. Because Defendants' voluntary actions have permanently remedied the location of all of the Property's grab bars, however, Defendants have simultaneously demonstrated that their polices <u>are</u> adequate under the ADA to ensure grab bar compliance in the future. In other words, Defendants' permanent remediation of the barrier claims automatically remedies the related lack of policy claims, since there is no longer a concern that compliance will not be maintained. Plaintiff's lack of policy claims—to the extent they exist—therefore rise and fall with his architectural barrier claims. Once Plaintiff loses the ability to pursue his architectural barrier claims—whether through mootness or standing—he loses his ability to pursue the claims which stem from those parent claims as well.

Moreover, contrary to Plaintiff's contentions, the mere previous existence of an architectural barrier that has been voluntarily remedied is **not** sufficient to defeat concepts of standing or mootness. *See Hillesheim v. Buzz Salons, LLC*, 2017 WL 3172870, at *6

---

[3] As with Defendants' opening memorandum, the term "Property" as used herein shall mean the real property located at 1940 Suburban Avenue, St. Paul, Minnesota.

(D. Minn. June 19, 2017), *report and recommendation adopted*, 2017 WL 3172751 (D. Minn. July 25, 2017) ("[A]lthough it would be prudent for Baxter's to have a policy regarding ADA compliance, the absence of such a policy alone does not, as [plaintiff] contends, 'seriously undermine[ ] a finding of mootness' when considering the uncontroverted evidence that the conduct complained of has been remedied."). Thus, the Court's determination that Plaintiff's barrier claims fail for mootness or lack of standing inevitably deems Plaintiff's lack of policy claims moot or improper for lack of standing. The two concepts are inextricably intertwined and Plaintiff cannot simply opt to pursue them separately. Thus, the Court need go no further than determining whether Plaintiff's barrier claims fail for mootness or standing issues.

  **B. Even if Plaintiff Could, in Theory, Maintain His Lack of Policy Claims Without his Architectural Barrier Claims, his Lack of Policy Claims Would Nevertheless Fail**

Even if Plaintiff was, theoretically, able to pursue his lack of policy claims despite the mootness and standing issues with his barrier claims, Plaintiff's claims nevertheless fail because he has provided no indication as to how Defendants' immediate remedial actions demonstrate inadequate "policies," or what policies still need to be implemented. *See generally* ECF 20, pp. 12–18.

Plaintiff provides only vague and overbroad statements that, because there were previously architectural barriers at the Property, Defendants must not have sufficient policies in place. *Id.* Such a leap of logic is incredible and would render ADA claims indefensible. Policies, in and of themselves, are not inherently perfect and cannot always prevent every imaginable mistake. The relevant question when determining whether

7

Plaintiff's claims are moot is therefore not whether Defendants' polices have been able to prevent every mistake conceivable, but rather whether Defendants' policies lead them to make "expeditious and thorough efforts to redress the problems." *Davis v. Morris-Walker, Ltd*, 2017 WL 6209825, at *2 (D. Minn. Dec. 7, 2017). Here, Defendants' actions were undoubtedly "expeditious," as evidenced by the fact that they: (1) hired an ADA-specialized auditor; (2) received an audit; (3) contracted to fix the problems; and (4) ensured that the issues had all been adequately remedied with a follow-up visit from an auditor, all in less than one month of learning of the issues. *See* ECF 16, ¶¶ 4–7 (demonstrating that Defendants learned of the issues on May 22, 2018 and completed remediation of all of the issues by June 19, 2018). Defendants' actions were likewise "thorough," providing permanent alterations to ensure ongoing compliance, and addressing additional issues not even identified by Plaintiff. *See* ECf 15, pp. 9–11.

Further, as this Court has specifically noted, a defendant's remediation of issues that are raised for the first time in an opposition brief and therefore not appropriately before the Court actually serves to support the fact that a defendant has adequate policies in place. *See Hillesheim*, 2017 WL 3172870, at *8 (finding that the defendant's remediation of ADA violations alleged for the first time in response to a motion to dismiss supported the defendant's "commitment to ADA compliance"). Plaintiff's assertion of newly-alleged violations does not undercut Defendants' commitment to the ADA as Plaintiff suggests, but rather **supports** it. Indeed, Defendants have not only remedied the additional issues that are not appropriately before this Court, but have also remedied issues that Plaintiff never alleged in his Amended Complaint. *See* ECF 16, ¶ 6(c) (demonstrating that

8

Defendants took steps to ensure that <u>all</u> doors at the Property complied with the ADA, regardless of the fact that Plaintiff only identified issues with one of the doors). Defendants have therefore repeatedly demonstrated their policy of taking swift action upon learning of an ADA compliance issue, whether raised in a lawsuit or not. They have further demonstrated their policy of making permanent alterations to remedy these identified issues—as opposed to "quick fixes"—to ensure that compliance is ongoing and the identified issues will never occur again.

Because Plaintiff has not—and cannot—offer any legitimate reason as to why Defendants' actions in this case do not demonstrate adequate policies and render Plaintiff's claims invalid for lack of standing or mootness, Defendants' Motion should be granted and Plaintiff's claims should be dismissed.

## IV. DEFENDANTS' REMEDIAL ACTIONS DEMONSTRATE THEIR COMMITMENT TO ADA COMPLIANCE AND SUPPORT THE FACT THAT THEIR REMEDIAL MEASURES ARE NOT LIKELY TO RECUR

### A. Defendants' Actions Demonstrate That They are Committed to ADA Compliance

Plaintiff attempts to diminish Defendants' efforts to remain ADA-compliant by claiming that this case involves violations that are "clear," and stating that "correcting [the violations] would involve only minimal expense." ECF 20, p. 8  Such oversimplified conclusions are not only misleading, but incorrect. Indeed, although Plaintiff alleges that ADA compliance is "clear," he, himself, appears uncertain of which ADA claims he is pursuing, asserting two new claims of alleged ADA violations for the first time in his Opposition. ECF 20, p. 23. Further, as this Court is aware, the ADA is not a "simple" and

9

"clear" matter at all.  If it were, there would be no need for the more than **370** distinct and separate parts and subparts of the ADA Accessibility Guidelines.  Regardless, Defendants have demonstrated their dedication to following the ADA by investing more than $11,000 to fix each identified problem before ever being named in a lawsuit.  Second Zelickson Decl., ¶ 5.  Moreover, even if there were "minimal expense" involved in addressing any alleged ADA violations, the fact that such violations no longer exist renders Plaintiff's claims moot.  Plaintiff's attempt to diminish Defendants' efforts by referring to Defendants' actions as "minimal" and simple is a transparent attempt to overcome the obvious weaknesses of his legal position.  Such unsupported allegations are insufficient to resurrect Plaintiff's moot claims or overcome his lack of standing, and his claims should be dismissed.

### B. Plaintiff's Claims Are Not Likely to Recur

As noted in Defendants' opening memorandum, the "capable-of-repetition doctrine applies **only in exceptional situations**."  *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (emphasis added).  There must be more than a "mere 'physical or theoretical possibility'" to invoke the capable of repetition yet evading review rule.  *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1211 (8th Cir. 1992).  Indeed, the "capable of repetition" exception does not apply where the "defendants' compliance with the ADA . . . is far 'more than a mere voluntary cessation of alleged illegal conduct, where we would leave [t]he defendant [s] . . . free to return to [their] old ways.'"  *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018).

10

Plaintiff offers no support for how this case is an "exceptional situation" that differs from any other ADA case. Rather, Plaintiff appears to spend nearly his entire Opposition arguing the opposite—that this case epitomizes the type of case that lead to the creation of the ADA. *See generally* ECF 20. It is therefore unclear exactly what basis Plaintiff has for believing that this case is so "exceptional" as to warrant the capable of repetition yet evading review rule.

Moreover, nothing about Defendants' conduct in this case represents "mere voluntary cessation" of actions that Defendants would be free to resume. Rather, each of Defendants' remedial actions in this case required several thought-out and affirmative actions. *See* ECF 16, ¶ 6. For example, when informed of possible ADA violations, Defendants hired an auditor specialized in ADA compliance, scheduled an appointment to have the Property assessed, determined the actions necessary to remedy the identified problems, ordered all parts and equipment necessary to remedy the problems, contracted with Legend Companies to make the necessary repairs, and then scheduled an additional follow-up audit to ensure that the repairs adequately addressed the identified problem. *Id.* If the issues in this case were truly to recur, Defendants would therefore need to take ***further affirmative and costly steps to abolish and reverse*** all of the work that has been done. Plaintiff's concerns that Defendants will take such incredible actions at their own expense is barely even a "theoretical possibility" and is clearly not sufficient to justify use of the capable of repetition exception.

Plaintiff further argues that his claims are capable of repetition because of Defendants' honest admission that they did not become aware of the architectural barriers

11

until May of this year.  ECF 20, pp. 22–23.  Put differently, Plaintiff appears to argue that any time a third-party brings a defendant's attention to a barrier that the defendant was previously unaware of, the claims alleged in the complaint are likely to recur and the defendant cannot moot the claims by removing the architectural barriers.  ECF 20, p. 21.  Such a sweeping rule would ignore the entire concept of "mootness" which, by definition, is remediation of claims *__after__* the beginning of a lawsuit but prior to final determination.  *See, e.g.*, *Davis*, No. 15-CV-3041 (WMW/KM), at 7 (D. Minn. Feb. 24, 2017) (noting that ADA claims are moot when a defendant presents evidence that it has remedied the issues identified in the complaint).  Moreover, such an interpretation is in direct conflict with public policy's desired approach toward accessibility claims, as evidenced by the recent amendment to the Minnesota Human Rights Act which now <u>requires</u> plaintiffs to give notice prior to filing suit to allow for voluntary remedial measures.  Minn. Stat. § 363A.331 ("Before bringing a civil action under section 363A.33, a person who is an attorney or is represented by an attorney and who alleges that a business establishment or place of public accommodation has violated accessibility requirements under law must provide a notice of architectural barrier consistent with subdivision 3.").  Thus, even if Plaintiff were correct that the Property was not fully-complaint until after initiation of this lawsuit—a contention which is plainly undermined by Defendants' remedial actions <u>prior</u> to being named in the action—such a fact would be legally irrelevant to whether Plaintiff's claims are now moot.  *See, e.g.*, *Wright v. RL Liquor*, 887 F.3d 361, 363 (8th Cir. 2018) (finding a plaintiff's claims to be moot where the defendant "became aware" of the alleged architectural barriers upon initiation of the lawsuit and remedied the problems prior to a decision on the merits).

Whether the identified problems were fixed before or after the initiation of legal action is immaterial to the inescapable fact that there is simply no harm for the Court to remedy in this case and Plaintiff's claims should be dismissed.

### C. Plaintiff's Reliance on *Sawczyn v. BMO Harris Bank Nat. Ass'n* is Misplaced

In support of his argument that the violations in this case are likely to recur, Plaintiff cites a single District of Minnesota case—*Sawczyn v. BMO Harris Bank Nat. Ass'n*, 8 F. Supp. 3d 1108 (D. Minn. 2014). *Sawczyn* is distinguishable from this case on several grounds. In *Sawczyn*, the plaintiff filed claims related to the defendant's failure to ensure that defendant's ATM machines had voice-guidance features and proper tactile symbols to allow plaintiff—a legally blind individual—to access the ATMs. *Sawczyn*, 8 F. Supp. 3d at 1110. The court considered a variety of factors in coming to its ultimate decision, including the fact that the defendant never acknowledged that its ATM machines previously violated the ADA, and the fact that the defendant failed to actually affirm that the problems had been fixed. *Id.* at 1114–15. The court therefore noted its hesitance to find the problems had been "remedied" (and would remain in compliance) when the defendant refused to ever acknowledge that a problem existed in the first place, and failed to affirm that the issues were actually remedied. *Id.* Here, it is undisputed that Defendants have acknowledged the architectural barriers that previously existed on the Property and took immediate and affirmative actions to correct them. ECF 15, pp. 8–9; ECF 16, ¶ 6. Moreover, Defendants have offered overwhelming evidence in the form of affidavits, photo exhibits, and auditor reports to conclusively demonstrate that all of Plaintiff's alleged

13

harms have been remedied. *See* ECF 15, pp. 8–9; ECF 16, ¶ 6 & Exs. A–M; ECF 17, ¶ 6. As such, the concerns expressed by *Sawczyn* are simply not present here.

Moreover, Plaintiff's allegation that *Sawczyn* refused to dismiss the claims because there was no evidence that the defendant's system was compliant before a lawsuit is misleading. ECT 20, pp. 12–13. Although the court did mention the fact that the defendant had not known about its violations prior to suit, it did so in the context of the defendant's failure to affirm <u>current</u> compliance. *Sawczyn*, 8 F. Supp. 3d at 1114. Specifically, the court noted that it was not clear whether the ATM machines were currently in compliance because the defendant did not state that it had affirmatively established compliance, but rather only stated that it was not *aware* of any new complaints about the machines. *Id.* The court therefore noted that the defendant's equivocal statement that it had not been *informed* that it was currently not in compliance was not sufficient to assure the court that the defendant was, in fact, ADA-compliant—particularly since the defendant had gone years before realizing that it was not in compliance the first time. *Id.* In short, the defendant failed to establish complete compliance. In the present case, as noted, Defendants do not rest on ambiguous averments to insinuate that they are currently compliant with the ADA. Rather, they provide substantial and conclusive evidence demonstrating their compliance. *See* ECF 15, pp. 8–9; ECF 16, ¶ 6 & Exs. A–M; ECF 17, ¶ 6. The concerns expressed by the *Sawczyn* court are therefore clearly not present here, and Plaintiff's reliance on *Sawczen* is misplaced.

## V. PLAINTIFF IS NOT ENTITLED TO NOMINAL DAMAGES UNDER THE LAW

In a last-ditch effort to save his case—or at least his and his attorney's economic incentive to continue to pursue the case—Plaintiff alleges that the Court cannot dismiss his claims because he is seeking nominal damages. ECF 20 at pp. 19–20. But Plaintiff offers no controlling or even persuasive authority to support this argument. Instead, Plaintiff attempts to justify his right to nominal damages by citing a non-controlling Ninth Circuit case, which—contrary to Plaintiff's assertions—did not rely on Eighth Circuit precedent, but rather <u>rejected</u> it. *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 870 (9th Cir. 2017) ("*Shaver's* persuasive power in the context of this appeal is significantly undermined by the context in which it was decided []."). Regardless, even *if Bayer* had relied on the Eighth Circuit's opinion in *Shaver v. Indep. Stave Co.*, 350 F.3d 716 (8th Cir. 2003), and even *if Bayer* was controlling—neither of which is true—Plaintiff's reliance on *Bayer* would nevertheless be misplaced. As the extremely narrow holding in *Bayer* makes clear, nominal damages are <u>not</u> available for all ADA claims, but rather <u>only</u> those claims arising **under 42 U.S.C. § 12203** "**when complete justice requires**." *Id.* at 874.

Here, Plaintiff's claims do not originate under Section 12203 but under § 12182. *See generally* ECF 1-1, pp. 13–18. Moreover, section 12203 relates only to "retaliation and coercion" in the employment context—two concepts which are not, in any way, related to Plaintiff's architectural barrier claims under Section 12182. *Compare* 42 U.S.C. § 12203 *with* 42 U.S.C. § 12182. As the *Bayer* Court made clear, its basis for finding authority to allow nominal damages in employment retaliation and coercion claims stemmed from its

15

authority to allow nominal damages for claims arising from <u>equal opportunity employment transgressions under 42 U.S.C. § 2000e-5</u>. *Bayer*, 861 F.3d at 870. Because there is no allegation regarding equal opportunity employment, nor any allegation related to retaliation or coercion, and because the Court in *Bayer* <u>expressly limited</u> its holding to claims arising under 42 U.S.C. § 12203, Plaintiff's citation to *Bayer* is insufficient to overcome the extensive amount of controlling case law that expressly and inescapably limits recovery under the ADA to "injunctive relief—<u>and not damages</u>."[4] *Queen Nelly, LLC*, 2016 WL 5868066, at *1 (emphasis added); *see also Wojewski v. Rapid City Reg'l Hosp., Inc.*, 450 F.3d 338, 342 (8th Cir. 2006). Put simply, Plaintiff does not have any ability to recover nominal damages in this case and his claims should be dismissed.

## VI. REMAND IN THIS CASE WOULD BE FUTILE

Plaintiff concludes his Opposition by arguing that, even if this Court finds his claims are moot or he lacks standing to assert them, the Court should nevertheless remand the case to state court. ECF 20, pp. 31–32. Plaintiff's argument, however, fails to account for the fact that such remand would be futile. Although Plaintiff argues that his claims would somehow be revived if not viewed under Article III's standards, the absence of Article III standards would not save his claims. Rather, the same concepts that operate to moot Plaintiff's claims in federal court would also serve to moot his claims in state court. *See, e.g.*, *Schiff v. Griffin*, 639 N.W.2d 56, 63 (Minn. Ct. App. 2002) ("The doctrine of mootness

---

[4] In addition to not being permitted by law, Defendants note that allowing a plaintiff who does not have standing to bring suit to maintain his action in hopes of recovering the nominal money damages incurred in bringing the action would be nothing short of illogical.

dictates that this court will hear only live controversies and will not pass on the merits of a particular question merely for the purpose of setting precedent."); *Mertins v. Comm'r of Nat. Res.*, 755 N.W.2d 329, 334 (Minn. Ct. App. 2008) ("The mootness doctrine requires a comparison between the relief demanded and the circumstances of the case at the time of decision to determine whether there is a live controversy that can be resolved."). Likewise, Plaintiff would lack standing in state court for the same reasons that he lacks standing in federal court. *See Twin Ports Convalescent, Inc. v. Minn. State Bd. of Health*, 257 N.W.2d 343, 346 (Minn. 1977) ("[T]he underlying purpose of the doctrine of standing and the various tests which it has spawned is 'to guarantee that there is a sufficient case or controversy between the parties so that the issue is properly and competently presented to the court.'"); *State ex rel. Sviggum v. Hanson*, 732 N.W.2d 312, 322 (Minn. Ct. App. 2007) ("[I]f a case is no longer redressable because it has become moot, we will issue a decision if the issue presented is capable of repetition but likely to evade review. . . . But the capable-of-repetition exception cannot revive a dispute that was moot before commencement of the action."); *Munt v. Smith*, 2016 WL 7042010, at *2 (Minn. Ct. App. Dec. 5, 2016), *review denied* (Feb. 14, 2017), *cert. denied*, 138 S. Ct. 85 (2017) ("[Plaintiff] is correct in implying that an exception to the mootness doctrine applies to issues capable of repetition but evading review. . . . But the exception cannot revive a dispute that was already moot when the action commenced."). Remand instead of dismissal would therefore serve no purpose in this case but to cause further delay and expense to Defendants.

Moreover, although remand may be warranted in cases where there is at least one state claim to pursue in state court, this case is distinguishable on the grounds that Plaintiff

17

does not have any state claims to pursue. Rather, Plaintiff's requested remand would merely remove federal claims arising under a federal statute from a federal court that has deemed them moot or improper due to lack of standing, and put them in the hands of a state court in hopes that the state court would somehow rule differently. Such a procedure serves no purpose but to prolong Plaintiff's ability to pursue meritless claims. Defendants therefore request that the Court dismiss Plaintiff's claims, finding them meritless, moot, and or futile for lack of standing.

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests the Court grant its Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Dated:  September 4, 2018                            WINTHROP & WEINSTINE, P.A.


By: *s/ Joseph M. Windler*_____
Joseph M. Windler, #0387758
Chelsea A. Ahmann, #0399146

225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400
jwindler@winthrop.com
cahmann@winthrop.com

*Attorneys for Defendants*

15980491v5